# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| **v.** | : | **DATE FILED:** |
| **CHRISTOPHER R. HOGG** | : | **VIOLATIONS:**<br>**18 U.S.C. § 1349 (conspiracy to commit bank fraud – 1 count)**<br>**18 U.S.C. § 1344 (bank fraud – 1 count)** |
| | : | **18 U.S.C. § 2 (aiding and abetting)**<br>**26 U.S.C. § 7206(1) (false return – 1 count)**<br>**26 U.S.C. § 7201 (attempt to evade or defeat tax – 1 count)** |
| | : | **Notice of forfeiture** |

## INFORMATION

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times relevant to this information:

### BACKGROUND

**The Conspirators**

1.      Defendant CHRISTOPHER R. HOGG was a resident of Pennsylvania, living in the Bryn Mawr area.  Hogg was a member of Global IT Sales LLC, a limited liability company registered in Delaware in or about 2014.  In or about March 2017, Global IT Sales LLC changed its name to Broad Street Holdings LLC.

2.      Rennie Rodriguez, charged elsewhere, was a resident of Pennsylvania, living in the Broomall area.  Rodriguez was a licensed insurance agent.  Rodriguez was President of Brandywine Insurance Advisors LLC, a limited liability company formed in or about December

2016 in Delaware.  Brandywine Insurance Advisors LLC was located on West Chester Pike in Broomall, PA.  Rodriguez was also President of Agency Bonding Captives, Inc., a corporation formed in or about February 2013 in Delaware.

3.     Neal A. Dunoff, charged elsewhere, was the Chief Credit Officer and Executive Vice President at U.S. Premium Finance ("USPF"), a company located in Norcross, Georgia.

### Insurance Premium Finance Loans

4.     Generally, the premium finance business involves the provision of financing by a premium finance company to an insured business for the purchase of commercial insurance products.  This financing allows the insured to use borrowed funds to pay the insurance premium "up front" to the third-party insurer.

5.     Premium financing is completed in the form of a loan with repayment terms usually ranging from one year to the life of the underlying policy, including principal and interest.  Loans are collateralized by the unused redemption value of the insurance policy.

6.     Premium finance loans allow policyholders to manage their cash flow and avoid the high initial out-of-pocket costs associated with expensive commercial insurance products.

7.     Typically, there are four primary parties involved in premium finance loans: the premium finance company, the insured party, an insurance agent to broker the transaction, and the insurance company.

8.     To obtain a premium finance loan, an insurance agent/broker submits documentation to the premium finance company on behalf of the insured.  This documentation typically includes information about the underlying insurance policy, as well as background and financial information about the insured.  The premium finance company typically subjects this information to an approval and verification process.

9.      After the premium finance company has approved the loan, the premium finance company provides funding for the insurance premium to the insurance agent/broker and notifies the insurance company that the premium has been paid to the agent.

10.      Typically, premium finance companies originate premium finance loans that are funded by a bank.  Specifically, after a premium finance company approves the loan, the premium finance company uses a bank to provide the funds for a loan.  Those funds are provided to the agent/broker.

### US Premium Finance, Ameris Bancorp, and BrandBank

11.      US Premium Finance ("USPF") was a premium finance company formed by W.V. in Florida in 1993.  USPF operated independently from 1993 to June 2001. Between June 2001 and December 2016, USPF operated as a division of various banks. In December 2016, USPF sold a minority interest in its outstanding shares of common stock to Ameris Bancorp. Effective January 1, 2017, USPF operated as a division of Ameris Bancorp.  In January 2018, Ameris Bancorp purchased the remaining outstanding shares of USPF, and USPF became a wholly-owned subsidiary of Ameris Bancorp.

12.      Ameris Bank was a Georgia state-chartered bank that conducted business in the state of Florida with its principal place of business in Duval County, Florida.  Ameris Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, with FDIC certificate number 20504.

13.      Ameris Bancorp was the holding company for Ameris Bank. Hereafter, Ameris Bancorp and Ameris Bank will be referred to collectively as "Ameris."

14.     BrandBank was the trademark name for The Brand Banking Company, which was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, with FDIC certificate number 878.

15.     The fraud alleged here arises from the issuance of fraudulent loans, originated by USPF, and funded by Ameris, or in a few instances prior to January 2017, funded by BrandBank.

**The Bank Accounts**

16.     On or about June 28, 2011, bank account ending #0543 was opened at Wells Fargo Bank in the name of Neal A. Dunoff.  In or about January 2013, the account was modified to include A.D.  Signors on the account were Dunoff and A.D.  This account is hereafter referred to as "Wells Fargo Bank #0543."

17.     In or about July 2015, bank account ending #8711 was opened at Citizens Bank in the name of Brandywine Insurance Advisors LLC.  Rennie Rodriguez was a signor on the account.  On or about September 5, 2017, authorized signors on the account were updated to include defendant CHRISTOPHER R. HOGG.  This account is hereafter referred to as "Citizens Bank #8711."

18.     On or about January 15, 2016, bank account ending #1203 was opened at Meridian Bank in the name of defendant CHRISTOPHER R. HOGG and J.H.  Signors on the account were defendant HOGG, J.H., and defendant HOGG's employee, N.S.  This account is hereafter referred to as "Meridian Bank #1203."

19.     On or about March 22, 2016, bank account ending #2935 was opened at Meridian Bank in the name of Global IT Sales LLC.  Signors on the account were defendant CHRISTOPHER R. HOGG, J.H., and N.S. This account is hereafter referred to as "Meridian #2935."

20.     On or about September 15, 2016, bank account ending #2243 was opened at Wells Fargo Bank in the name of NAD Investments LLC.  Neal A., Dunoff was the sole authorized signor on the account.  This account is hereafter referred to as "Wells Fargo Bank #2243."

## THE CONSPIRACY

21.     From in or about November 2016 through in or about January 2018, defendant

## CHRISTOPHER R. HOGG

and others, including Rennie Rodriguez and Neal A. Dunoff, conspired and agreed to knowingly execute a scheme to defraud Ameris Bank, and BrandBank, and to obtain monies owned by and under the care, custody, and control of those banks by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

22.     Beginning in or about late 2016, defendant CHRISTOPHER R. HOGG agreed with Rennie Rodriguez and Neal A. Dunoff that Dunoff would approve loans submitted on behalf of defendant HOGG and Rodriguez, which would purport to be premium finance loans to pay for commercial insurance policies but for which there would be no actual insurance policies. In reality, the loans would be for the use of defendant HOGG, Rodriguez, and in a few instances, for at least one other individual.  Rodriguez would submit the loans to USPF through one of Rodriguez's insurance agencies.

23.     Thereafter, knowing that the insurance premium finance loans originated by defendant CHRISTOPHER R. HOGG and Rennie Rodriguez were fraudulent in that there was

no actual insurance policy, Neal A. Dunoff nonetheless approved the loans and took steps to prevent Ameris and BrandBank from detecting the fraud.

24.     For example, Neal A. Dunoff waived various "pre" and "post" funding protocols at USPF – protocols that existed to protect the company against fraud.  That is, USPF had very clear internal guidelines for the review of loan documents.  These included pre-funding verification, in which USPF would request oral verification of the existence of the insurance policy, and post-funding verification, in which USPF reviewers would verify that the funds had been paid to the insurance company providing the policy for which USPF provided the premium financing loan. Dunoff would waive the pre- and post-funding verifications for the loans that were part of the scheme.  Dunoff also approved supporting documentation for the loans that in some cases included fake insurance policy binders.

25.     From in or about November 2016 through in or about January 2018, Neal A. Dunoff approved approximately 37 premium finance loans, or loan supplements, originated by insurance agencies controlled by Rennie Rodriguez, purportedly to purchase policies to insure entities owned or controlled by defendant CHRISTOPHER R. HOGG and/or Rennie Rodriuguez, or in a few instances controlled by at least one other individual. These loans were purportedly for the purpose of financing premiums allegedly to be paid by the entities for insurance.  However, as defendant HOGG, Rodriguez, and Dunoff knew, there were no underlying insurance policies.  The loans totaled approximately $21,357,645.

26.     After Neal A. Dunoff approved the loans, Ameris (or in some cases USPF or BrandBank) transmitted, or caused to be transmitted, via wire or other bank transfer, the loan proceeds to accounts in the names of insurance agencies owned or controlled by Rodriguez.

27.     Instead of paying insurance premiums (because there were no insurance policies and therefore no premiums that needed paying), Rennie Rodriguez kept some of the proceeds for himself and distributed most of the other proceeds to bank accounts controlled by defendant CHRISTOPHER R. HOGG, or in a few instances to other individuals or entities.

28.     Defendant CHRISTOPHER R. HOGG and Rennie Rodriguez used some of the proceeds from newer (later) loans to make loan payments on older loans.

29.     In total, defendant CHRISTOPHER R. HOGG and Rennie Rodriguez received approximately $21 million in loan proceeds from Ameris and Brandbank.  They made approximately $6.5 million in loan payments, resulting in a net loss to Ameris and Bandbank of approximately $15 million.

30.     Defendant CHRISTOPHER R. HOGG received at least approximately $10 million of the approximately $15 million of net loan proceeds.

31.     Between in or about October 2016 through in or about December 2017, defendant CHRISTOPER R. HOGG made approximately 40 payments to Neal A. Dunoff totaling approximately $873,118.  Defendant HOGG made these payments to Dunoff in return for Dunoff's approval of the fraudulent loans, his efforts to avoid pre- and post-funding verifications for the loans, and his other actions in furtherance of the scheme.

**OVERT ACTS**

In furtherance of the conspiracy, defendant CHRISTOPHER R. HOGG, and others known and unknown to the United States Attorney, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.     On or about April 27, 2017, Rennie Rodriguez sent, or caused to be sent to USPF, a Premium Finance Agreement and Disclosure Statement ("Statement") for a putative borrower

for financing of $382,075.  The Statement submitted to USPF listed the Producer (Agent/Broker) as Brandywine Insurance Advisors, LLC with a place of business listed as 6 Berkeley Road, Devon, Pennsylvania.

2.      On or about April 28, 2017, Neal A. Dunoff caused loan proceeds of $382,075 to be sent via wire transfer from Ameris in Georgia to Citizens Bank #8711, an account controlled by Rennie Rodriguez, in Pennsylvania.

3.      On or about May 1, 2017, Rennie Rodriguez sent or caused to be sent via wire transfer the sum of $382,075.00 from Citizens Bank #8711, an account he controlled, to Meridian Bank #2935, an account controlled by defendant CHRISTOPHER R. HOGG.

4.      On or about May 8, 2017, defendant CHRISTOPHER R. HOGG sent or caused to be sent check #351 in the amount of $10,000 drawn on Meridian Bank #1203, an account he controlled, to Neal A. Dunoff. The check was deposited into Wells Fargo Bank #2243, an account controlled by Dunoff.

5.      On or about August 22, 2017, Rennie Rodriguez submitted, or caused to be submitted to USPF, a Premium Finance Agreement and Disclosure Statement ("Statement") for a putative borrower for financing of $710,175.  The Statement submitted to USPF listed the Producer (Agent/Broker) as Agency Bonding Captives, Inc., with a place of business on West Chester Pike in Broomall, Pennsylvania.

6.      On or about August 23, 2017, Neal A. Dunoff caused loan proceeds of $710,175 to be sent via wire transfer from Ameris in Georgia to Citizens Bank #8711, an account controlled by Rennnie Rodriguez.

7.      On or about August 24, 2017, Rennie Rodriguez sent or caused to be sent via wire transfer the sum of $710,175 from Citizens Bank #8711, an account he controlled, to Meridian Bank #1203, an account controlled by defendant CHRISTOPHER R. HOGG.

8.      On or about August 23, 2017, defendant CHRISTOPHER R. HOGG sent or caused to be sent check #121 in the amount of $30,000 drawn on Meridian Bank #1203, an account he controlled, to Neal A. Dunoff.  On or about August 28, 2017, Dunoff deposited, or caused to be deposited, check #121 into Wells Fargo Bank #2243, an account controlled by Dunoff.

9.      On or about November 2, 2017, Rennie Rodriguez sent, or caused to be sent, a Premium Finance Agreement and Disclosure Statement ("Statement"), for a putative borrower to USPF, for financing of approximately $600,100.  The Statement submitted to USPF listed the Producer (Agent/Broker) as Brandywine Insurance Advisors, LLC with a place of business listed as 6 Berkeley Road, Devon, Pennsylvania.

10.     On or about November 2, 2017, Neal A. Dunoff caused loan proceeds of approximately $600,100 to be sent via wire transfer from Ameris in Georgia to Citizens Bank #8711, an account controlled by defendant CHRISTOPHER R. HOGG and Rennie Rodriguez.

11.     On or about November 3, 2017, defendant CHRISTOPHER R. HOGG sent or caused to be sent a wire in the amount of approximately $30,000 from Meridian Bank #1203, an account he controlled, to Wells Fargo Bank #0543, an account controlled by Neal A. Dunoff.

All in violation of Title18, United States Code, Section 1349.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 20 and 22 through 30 of Count One are incorporated here by reference.

2.      From in or about November 2016 through in or about January 2018, in Norcross, in the Northern District of Georgia and elsewhere, defendant

### CHRISTOPHER R. HOGG

knowingly executed, and attempted to execute, and aided and abetted, a scheme to defraud Ameris Bank, and to obtain monies owned by and under the care, custody, and control of that bank by means of false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

3.      On or about April 27, 2017, Rennie Rodriguez sent, or caused to be sent to USPF, a Premium Finance Agreement and Disclosure Statement ("Statement") for a putative borrower for financing of $382,075.  The Statement submitted to USPF listed the Producer (Agent/Broker) as Brandywine Insurance Advisors, LLC with a place of business listed as 6 Berkeley Road, Devon, Pennsylvania.

4.      On or about April 28, 2017, Neal A. Dunoff caused loan proceeds of $382,075 to be sent via wire transfer from Ameris in Georgia to Citizens Bank #8711, an account controlled by Rennie Rodriguez in Pennsylvania.

5.      On or about May 1, 2017, Rennie Rodriguez sent or caused to be sent via wire transfer the sum of $382,075 from Citizens Bank #8711, an account he controlled, to Meridian Bank #2935, an account controlled by defendant CHRISTOPHER R. HOGG.

6.      On or about May 8, 2017, defendant CHRISTOPHER R. HOGG sent or caused to be sent check #351 in the amount of $10,000 drawn on Meridian Bank #1203, an account he controlled, to Neal A. Dunoff.  The check was deposited into Wells Fargo Bank #2243, an account controlled by Dunoff.

7.      On or about August 22, 2017, Rennie Rodriguez submitted, or caused to be submitted to USPF, a Premium Finance Agreement and Disclosure Statement ("Statement") for a putative borrower for financing of $710,175.  The Statement submitted to USPF listed the Producer (Agent/Broker) as Agency Bonding Captives, Inc., with a place of business on West Chester Pike in Broomall, Pennsylvania.

8.      On or about August 23, 2017, Neal A. Dunoff caused loan proceeds of $710,175 to be sent via wire transfer from Ameris in Georgia to Citizens Bank #8711, an account controlled by Rennie Rodriguez.

9.      On or about August 24, 2017, Rennie Rodriguez sent or caused to be sent via wire transfer the sum of $710,175 from Citizens Bank #8711, an account he controlled, to Meridian Bank #1203, an account controlled by defendant CHRISTOPHER R. HOGG.

10.      On or about August 23, 2017, defendant CHRISTOPHER R. HOGG sent or caused to be sent check #121 in the amount of $30,000 drawn on Meridian Bank #1203, an account he controlled, to Neal A. Dunoff.  On or about August 28, 2017, Dunoff deposited, or caused to be deposited, check #121 into Wells Fargo Bank #2243, an account controlled by Dunoff.

11.      On or about November 2, 2017, Rennie Rodriguez sent, or caused to be sent to USPF, a Premium Finance Agreement and Disclosure Statement ("Statement"), for a putative borrower for financing of approximately $600,100.  The Statement submitted to USPF listed the

Producer (Agent/Broker) as Brandywine Insurance Advisors, LLC with a place of business listed as 6 Berkeley Road, Devon, Pennsylvania.

12.    On or about November 2, 2017, Neal A. Dunoff caused loan proceeds of approximately $600,100 to be sent via wire transfer from Ameris in Georgia to Citizens Bank #8711, an account controlled by defendant CHRISTOPHER R. HOGG and Rennie Rodriguez.

13.    On or about November 3, 2017, defendant CHRISTOPHER R. HOGG sent or caused to be sent a wire in the amount of approximately $30,000 from Meridian Bank #1203, an account he controlled, to Wells Fargo Bank #0543, an account controlled by Neal A. Dunoff.

In violation of Title 18, United States Code, Sections 1344 and 2.

## <u>COUNT THREE</u>

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 20 and 22 through 30 of Count One are incorporated here by reference.

2.      In 2016, defendant CHRISTOPHER R. HOGG received at least approximately $373,735 of income from various sources, but failed to report this income on his 2016 Form 1040 Individual Income Tax return.

3.      Defendant CHRISTOPHER R. HOGG obtained at least this amount of income from the following sources: $1,066,923 from Brandywine Insurance Advisors, an amount comprised of the proceeds from two of the first three fraudulent loans obtained in the USPF insurance premium financing scheme; $848,163 from Global IT, one of defendant HOGG's companies; $230,949 from Innovant (aka Employee Max), another of defendant HOGG's companies; and $20,833 from Single Employer Services, another company owned by defendant HOGG.

4.      Of these funds, defendant CHRISTOPHER R. HOGG spent at least approximately $373,735 on personal expenditures, including credit card payments for family members, car payments, country club dues, vacations, private school tuition, and college tuition.

5.      This unreported income of at least $373,735 resulted in a tax loss of at least approximately $83,845.

6.      On or about August 26, 2017, in the Eastern District of Pennsylvania, and elsewhere, defendant

**CHRISTOPER R. HOGG**

13

willfully made and subscribed a United States income tax return, Form 1040, for the calendar year 2016, which was verified by a written declaration that it was made under the penalty of perjury and filed with the Director, Internal Revenue Service Center, at Philadelphia, Pennsylvania, which defendant HOGG did not believe to be true and correct as to every material matter, in that the return did not include $373,735 of taxable income that defendant HOGG fraudulently obtained from USPF and other sources.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FOUR

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 20 and 22 through 30 of Count One are incorporated herein by reference.

2.      On or about August 15, 2016, account ending 2233, was opened at PNC Bank. This account was the payroll tax escrow account for Employer Services Online, one of defendant CHRISTOPHER R. HOGG's companies.  The signors on this account were R.C. and N.S.   This account is hereafter referred to as "PNC #2233."

3.      On or about July 5, 2016, account ending 3800**,** was opened at Meridian Bank in the name of Innovant Investment Group, LLC**,** one of defendant CHRISTOPER R. HOGG's companies.  The signors on this account were defendant HOGG, R.C., and N.S.   This account is hereafter referred to as "Meridian #3800."

4.      On or about January 25, 2016, account ending 0414**,** was opened at Meridian Bank, also in the name of Innovant Investment Group, LLC.  The signors on this account were defendant CHRISTOPHER R. HOGG, R.C., and N.S.   This account is hereafter referred to as "Meridian Bank #0414."

5.      In 2017, defendant CHRISTOPHER R. HOGG received income of approximately $115,500 in payments reported on IRS Forms 1099.

6.      In addition, in 2017, defendant CHRISTOPHER R. HOGG diverted approximately $595,115 of funds from the payroll tax escrow account of Employer Services Online, PNC #2233, to his personal use, specifically, for the purchase of his residence in Bryn Mawr, PA, as follows:

a.      On or about May 4, 2017, defendant HOGG transferred or caused to be transferred $315,000 from the payroll tax escrow account (PNC #2233) to the Innovant account (Meridian Bank #3800).  That same day, defendant HOGG transferred or caused to be transferred approximately $284,900 from the Innovant account (Meridian Bank #3800) to the Global IT (Meridian account #2935).

b.      On or about May 11, 2017, defendant HOGG transferred or caused to be transferred approximately $160,000 from the payroll tax escrow account (PNC #2233) to Innovant's account (Meridian Bank #3800).  That same day, defendant HOGG transferred or caused to be transferred approximately $159,790 from the Innovant account (Meridian Bank #3800) to Global IT's account (Meridian Bank #2935).

c.      On or about May 15, 2017, defendant CHRISTOPHER R. HOGG transferred or caused to be transferred $315,000 from the payroll tax escrow account (PNC #2233) to the Innovant account (Meridian Bank #3800).  That same day, defendant HOGG transferred or caused to be transferred $314,990 from the Innovant account (Meridian Bank #3800) to a different Innovant account (Meridian bank #0414). Defendant HOGG then immediately transferred or caused to be transferred $314,990 from that Innovant account (Meridian Bank #0414) to the Global IT account (Meridian Bank #2935).

d.      Finally, also on May 15, 2017, defendant HOGG purchased or caused to be purchased a certified check from the Global IT account (Meridian Bank #2935), payable to Main Street Abstract Company for $595,115, for the purchase of defendant HOGG's residence in Bryn Mawr, PA.

e.      The transfers listed above were the only deposits into the Global IT account prior to the purchase of the certified check.  But for these deposits, there would have been insufficient funds for the certified check.

f.      The residence was titled in the name of J.H., a family member.

7.      Also in 2017, defendant CHRISTOPHER R. HOGG used approximately $1,165,032 of fraudulently obtained insurance premium financing proceeds for his personal use, for expenses such as private school tuition, college tuition, car payments, and vacations. Defendant HOGG also used $400,000 of these fraudulently obtained funds towards the purchase of the Bryn Mawr residence, as follows.

a.      On four separate dates in 2017, defendant HOGG caused fraudulently obtained insurance premium loan proceeds to be transferred from the Brandywine Insurance Advisors account (Citizens Bank #8711) to the Global IT account (Meridian Bank #2935).  On each of these dates, defendant HOGG then transferred or caused to be transferred the funds from the Global IT account (Meridian Bank #2935) to a personal account of defendant HOGG and J.H. (Meridian account #1203).  Defendant HOGG then transferred or caused to be transferred the funds from Meridian Bank #1203 to an account solely in the name of J.H.  The funds, totaling $400,000, were then used for the purchase of the Bryn Mawr, PA, residence.

8.      Defendant CHRISTOPHER R. HOGG did not provide his accountant with bank statements or other records that would have revealed defendant HOGG's use of corporate funds for personal expenditures.

9.      Defendant CHRISTOPHER R. HOGG did not file a Form 1040 Individual Income Tax return for tax year 2017, despite receiving at least approximately $1,760,146 in income for that year, resulting in a tax loss of approximately $667,119.

10.      On or about April 15, 2018, in Bryn Mawr, in the Eastern District of Pennsylvania, defendant

## CHRISTOPHER R. HOGG,

a resident of Bryn Mawr, Pennsylvania, willfully attempted to evade and defeat an income tax due and owing by him to the United States of America for the calendar year 2017 by failing to make an income tax return on or about April 15, 2018, as required by law, to any proper officer of the Internal Revenue Service, and by failing to pay to the Internal Revenue Service this income tax, and by concealing and attempting to conceal from all proper officers of the United States of America his true and correct income through various means, including, among other things:

(1)      by using a bank account of Global IT to receive the USPF funds and to transfer money to his personal bank accounts;

(2)      by diverting business funds from the bank accounts of Innovant and Single Employer Services to his personal bank account to pay personal expenses;

(3)      by using a series of transfers between bank accounts to conceal his use of funds from a business payroll tax escrow account towards the purchase of his personal residence in Bryn Mawr, PA; and

(4)      by failing to provide bank statements or other records to his accountant.

In violation of Title 26, United States Code, Section 7201.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      As a result of the violation of Title 18, United States Code, Section 1344, set forth in this indictment, defendant

### CHRISTOPHER R. HOGG

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds obtained directly or indirectly from the commission of such violations including, but not limited to, the sum of up to $21,357,645.20.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

19

All pursuant to Title 18, United States Code, Section 982.

_____ for

_____
**JENNIFER ARBITER WILLIAMS**
**Acting United States Attorney**

*No.*_ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA

v.

CHRISTOPHER R. HOGG

INFORMATION

Counts
18 U.S.C. § 1349 (conspiracy to commit bank fraud – 1 count)
18 U.S.C. § 1344 (bank fraud – 1 count)
18 U.S.C. § 2 (aiding and abetting)
26 U.S.C. § 7206(1) (false return – 1 count)
26 U.S.C. § 7201 (attempt to evade or defeat tax – 1 count)
Notice of forfeiture

A true bill.

_____
Foreman

Filed in open court this _____day,
Of _____A.D. 20_____

_____
Clerk

Bail, $_____